González Rivera, Juez Ponente
*1057 TEXTO COMPLETO DE LA SENTENCIA
La Unión de Empleados de la Corporación del Fondo del Seguro del Estado, Inc. (en adelante la Unión) comparece en el presente recurso de apelación para solicitar la revisión y revocación de una sentencia dictada el 8 de octubre de 2001. Mediante el dictamen apelado, el Tribunal de Primera Instancia, Sala Superior de San Juan Hon. Dora Peñagarícano Soler, J., declaró “No Ha Lugar” la demanda presentada por la Unión contra la Corporación del Fondo del Seguro del Estado (en adelante C.F.S.E.). En su consecuencia, ordenó el archivo y sobreseimiento de la causa de acción instada.
Ante nos, la Unión plantea como fundamento de revocación la comisión de los siguientes errores: (1) concluir que los nombramientos de los empleados unionados cesanteados eran ilegales por haberse efectuado durante el período de veda electoral; (2) concluir que no se había seguido el procedimiento de publicar las convocatorias; y (3) concluir que los empleados cesanteados no tenían interés propietario sobre sus puestos. Cónsono con su posición, la Unión argumenta que la Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. see. 1301, et. seq., ni el Reglamento de Personal de la C.F.S.E., le son aplicables y que los procedimientos que envuelven estos nombramientos se rigen por el convenio colectivo.
Por su parte, la C.F.S.E. plantea en su escrito en oposición al recurso, que los nombramientos de los empleados que fueron separados de sus puestos eran nulos por haberse efectuado en contravención a la ley, a los procedimientos establecidos en el convenio colectivo, al principio de mérito y por haberse hecho durante el período de veda electoral.
Considerados los fundamentos de error invocados, a la luz del derecho aplicable y la jurisprudencia interpretativa, resolvemos que resulta procedente confirmar la sentencia apelada. No obstante lo anterior, y para mayor claridad de nuestro dictamen, se imponen unas consideraciones relacionadas a la exposición de los hechos incontrovertidos que culminaron en la sentencia que es objeto del recurso que nos ocupa.
I
La Unión presentó una demanda de injunction preliminar y permanente contra la C.F.S.E., en la cual solicitó se ordenase la reinstalación en sus puestos a todos los empleados unionados que fueron destituidos el 24 de agosto de 2001 y se dejara.en vigor todos los acuerdos suscritos entre las partes. Consolidados ambos procedimientos, las partes acordaron dilucidar únicamente la validez de las separaciones de los empleados que fueron nombrados después del 1 de agosto de 2000, que advinieron a ser empleados regulares de carrera conforme a unas estipulaciones firmadas entre el entonces administrador de la C.F.S.E. y el presidente de la Unión. Otras transacciones de personal hechas antes del 1 de agosto de 2000, fueron impugnadas, no obstante, las partes acordaron que la validez de dichas transacciones se iba a dilucidar en el caso KAC2001-5928, pendiente ante dicho foro.
A tenor con una orden del foro apelado, las partes se reunieron y presentaron un informe conjunto en la cual estipularon hechos y prueba documental. Asimismo, presentaron sendos escritos en apoyo de sus respectivas posiciones, ello con el fin de poner al tribunal en posición de resolver la controversia planteada. Los hechos estipulados son los siguientes:

“1. El 28 de enero de 2000, se firmó el Convenio Colectivo de la Unión de Empleados de la C.F.S.E., con vigencia del 1 de julio de 1999 al 30 de julio de 2003.

2. Posterior a la firma del convenio, la C.F.S.E. y la Unión otorgaron varias estipulaciones, entre las que se 
*1058
encuentra la Estipulación del 1 de agosto de 2000.

3. Entre el 1 de agosto de 2000 y el 31 de diciembre de 2000, se efectuaron nombramientos de empleados en la C.F.S.E.

4. Trescientos treinta y siete (337) empleados de la C.F.S.E. advinieron regulares conforme a la estipulación del 1 de agosto de 2000. De éstos, ciento cuarenta y cuatro (144) fueron nombrados antes del 1 de agosto de 2000.

5. Para efectuar los nombramientos como empleados regulares, no se efectuaron convocatorias.

6. Al día de hoy, la C.F.S.E. y la Unión no han acordado el procedimiento a seguir para efectuar convocatorias, según dispuesto en el convenio colectivo vigente.

7. Ciento setenta y ocho (178) empleados fueron separados de sus puestos efectivo el 24 de agosto de 2001.

8. Las personas que ocupaban posiciones temporeras hasta el 31 de julio de 2000, ciento cuarenta y cuatro (144) empleados, fueron nombrados a puestos regulares a tenor con la Estipulación de 1 de agosto de 2000. Dichos empleados no fueron separados de sus puestos. ”

Con el anterior trasfondo y restando sólo la aplicación del derecho, el 8 de octubre de 2001, el foro apelado dictó sentencia en el caso. Mediante la misma, declaró “No Ha Lugar” la demanda presentada por la Unión contra la C.F.S.E., decretando el archivo y sobreseimiento de la causa de acción instada. Resolvió el Tribunal, que utilizar la alegada situación existente en la C.F.S.E. con los empleados temporeros como subterfugio para realizar nombramientos de personal nuevo a puestos regulares, sin atender las exigencias del principio de mérito e incumpliendo con el período de veda electoral, es violentar y atentar contra el propio convenio colectivo y el principio de mérito. Consecuentemente, resolvió que los ciento setenta y ocho (178) nombramientos realizados luego del 1 de agosto de 2000, son ilegales. 
Presentadas las correspondientes mociones de reconsideración y solicitud de determinaciones de hechos adicionales, éstas fueron declaradas “No Ha Lugar” el 29 de octubre de 2001. Inconforme, la Unión recurrió en tiempo oportuno ante este foro apelativo. Ante nos reproduce los mismos argumentos que levantó ante el foro apelado. Por constituir la médula de esta controversia la alegada inaplicabilidad del principio de mérito y la prohibición de efectuar nombramientos durante el período de veda electoral, discutiremos los tres señalamientos de error en conjunto. Al ejercer nuestra función revisora, reiteramos las normas legales y jurisprudenciales pertinentes al asunto planteado.
II
La Ley de Personal del Servicio Público de Puerto Rico, supra, establece como política pública que el principio de mérito rige el sector de empleo público en Puerto Rico. 3 L.P.R.A. see. 1311 (1). De tal modo, serán los más aptos los que sirvan al gobierno y que todo empleado será seleccionado, adiestrado, ascendido, y retenido en su empleo en consideración al mérito y a la capacidad, sin discrimen por razón de raza, color, sexo, nacimiento, edad, origen o condición social, ni ideas políticas o religiosas. Véase, además, Cintrón Santana v. Supte. Policía de P.R., 131 D.P.R. 1 (1982).
Originalmente, la referida Ley excluía de su aplicación a las siguientes instrumentalidades del gobierno: la Rama Legislativa; la Rama Judicial; los empleados de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados; y los empleados de agencias o instrumentalidades del gobierno que tengan derecho a negociar colectivamente mediante leyes especiales.
En cuanto a la administración de personal de la Rama Judicial y la Rama Legislativa, la Ley dispuso que se regirán por las disposiciones de las leyes vigentes aplicables a dichas ramas. Sin embargo, en cuanto a la *1059 administración de los demás organismos excluidos, la Ley dispuso que éstos debían adoptar un reglamento de personal, en el cual tenían que incorporar el principio de mérito.
Posteriormente, mediante la Ley Núm. 49 de 7 de junio de 1977, 3 L.P.R.A. see. 1338 (5), se añadió a la lista de organismos excluidos de la aplicación de la Ley de Personal del Servicio Público, supra, a la Universidad de Puerto Rico; igualmente se dispuso que. ésta tenía que adoptar un reglamento de personal que incorporase el principio de mérito. Como vemos, la intención legislativa es obligar a los organismos excluidos de la aplicación de la Ley de Personal que incorporen el principio de mérito. Como salvaguarda de dicho principio y a los fines de asegurar la fiel aplicación del mérito en el servicio público, durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva áreas esenciales del principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios en categorías de empleados. Artículo 18 del Reglamento de Personal de la C.F.S.E., supra; Ortiz v. Alcalde de Aguadilla, 107 D.P.R. 819 (1978).
Tal prohibición es salvaguarda por excelencia del principio de mérito que rige el servicio público. El Tribunal Supremo de Puerto Rico ha resuelto que el mismo es un detente legislado para los cuatro meses en que por llegar a máxima efervescencia las pasiones políticas, pueden las flaquezas humanas traducirse en bondad para los partidarios o represalias contra el adversario, determinar cambios en el personal extraños y opuestos al fundamental principio de mérito. Ortiz v. Alcalde de Aguadilla, supra.
En virtud de los principios expuestos, toda persona que sea nombrada a un puesto en el servicio público deberá reunir los requisitos de preparación académica o experiencia que se hayan establecido para la clase. Los nombramientos de empleados públicos para ocupar puestos de carrera, hechos en contravención a las disposiciones de ley y reglamentos de personal, son nulos e ineficaces y, por consiguiente, cualquier derecho derivado de la tenencia de tal cargo de carrera, queda anulado una vez se determine su ilegalidad. Véase, 31 L.P. R.A. see. 4.
Ill
Atendamos el reclamo de la Unión de que el principio de mérito y la veda electoral no son de aplicación a las transacciones de personal aquí en controversia.
La Ley Orgánica de la C.F.S.E., Ley Núm 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1, et. seq, establece en lo pertinente, en la sección l(b)-4(g), lo siguiente:

“(g)... La C.F.S.E. estará exenta de las disposiciones de las sees. 1301 et. seq. del Título 3, conocidas como “Ley de Personal del Servicio Público de Puerto Rico”, y de los reglamentos de personal adoptados en virtud de la misma. No obstante, el Sistema de Personal que se establezca deberá estar basado en el principio de mérito y de conformidad con las reglas y reglamentos que a esos efectos adopte el Administrador. ”

Para dar cumplimiento a dicho mandato, el Administrador aprobó el Reglamento de Personal de la C.F.S.E. efectivo el 1 de marzo de 1983. El mismo establece, como base legal, en su Artículo 1, lo siguiente:

“La Ley Núm. 45 del 18 de abril de 1935, conocida como la Ley de Compensaciones por Accidentes del Trabajo, según enmendada por la Ley Núm. 103 del 28 de junio de 1969, en el inciso (a) del Artículo 6, faculta al Administrador, entre otras cosas, a establecer, organizar y administrar sus propios sistemas y controles adecuados de personal para una operación eficiente y económica de los servicios sin sujeción a las disposiciones de la Ley Núm. 345 del 12 de mayo de 1947, según enmendada, conocida como Ley de Personal.

Establece, además, que el sistema de personal que por esta Ley se faculta al Fondo del Seguro del Estado a establecer, deberá estar basado en el principio de mérito.

La Ley Núm. 5 del 14 de octubre de 1975 deroga la Ley Núm. 345, supra, y establece un nuevo sistema de 
*1060
personal del servicio público de Puerto Rico. En el inciso 4 de su sección 10.6 excluye de su aplicabilidad a los empleados de agencias e instrumentalidades del gobierno que tengan derecho a negociar colectivamente mediante leyes especiales, disponiendo, sin embargo, que deberán adoptar, con el asesoramiento de la Oficina de Personal, un reglamento de personal incorporando el principio de mérito que regirá las normas de personal de aquellos empleados no cubiertos por convenios colectivos.

La nueva Ley de Personal precisa una nueva política pública para reafirmar el principio de mérito y extenderlo a todos los sectores del empleo público, de manera que este principio quede garantizado en los sistemas que se establezcan. ”

A su vez, en cumplimiento con la Ley Núm. 45, supra, se incluyó el principio de mérito en el convenio colectivo suscrito entre las partes el 28 de enero de 2000. De tal modo, el Art. 5(4) y el Art. 9(5)(b) establece lo siguiente:

“Artículo 5: Antigüedad

4. Las partes reconocen que la antigüedad no está reñida con el principio de mérito y que, por tanto, es un factor que conjuntamente con la preparación académica, la experiencia, la puntualidad, asistencia y la conducta del empleado, debe reconocerse y utilizarse en lo relativo a ascensos, cesantías y otros movimientos de personal. Las partes revisarán el procedimiento actual para certificación y selección de puestos en ascensos y de ingresos que entienda cumplan con la ley y con los parámetros de esta sección...

Artículo 9: Nombramientos, Ascensos y Reclasificaciones

5. Convocatorias para Ingreso

a. Las convocatorias para ingreso serán aquéllas donde habrá una libre competencia para todo el público, incluyendo los empleados de la C.F.S.E.. La experiencia y evaluación satisfactoria de un empleado temporero de la C.F.S.E. le cualificara para ser seleccionado a dicha convocatoria excluyendo cualquier otro candidato sin historial previo de trabajo en la C.F.S.E..

b. La selección de los candidatos a ingreso se hará a base del principio de mérito, conforme con la preparación académica y requisitos de la convocatoria. Tendrán preferencia los candidatos con historial previo en la C.F.S.E. que hayan prestado servicios satisfactoriamente. Todo candidato seleccionado ajeno a la C.F.S.E. en una convocatoria de ingreso, deberá someterse a exámenes médicos para determinar sus condiciones físicas y mentales, incluyendo pruebas de dopaje realizadas por un laboratorio del Departamento de Salud de Puerto Rico. Todo empleado temporero o candidato seleccionado en una convocatoria de ingreso será referido a la Oficina de la Unión para una entrevista de orientación con un funcionario de la Unión.

c. Las partes se reunirán dentro de los próximos cuarenta y cinco (45) días a partir de la fecha de la firma del presente Convenio para iniciar la elaboración del procedimiento a utilizarse para la certificación y selección de los aspirantes a puestos de ingreso, ascenso y todo lo relativo a las convocatorias. ”

Examinado y estudiado el convenio colectivo vigente, vemos que el mismo contempla un proceso de emisión *1061 de convocatorias para ingresos o ascensos, en el cual incorpora expresamente el principio de mérito. Se establece de forma clara que la selección de candidatos a ingreso se hará a base de dicho principio. Una vez adopta el principio de mérito, se adopta también su salvaguarda por excelencia, el principio de veda electoral.
Por otro lado, y abonándose a lo precedentemente expuesto, el Artículo 9(6)(b) dispone:
“6. Convocatorias para Ascensos:

b. Las convocatorias para ascensos serán únicamente para los empleados comprendidos en la unidad apropiada. Tendrán preferencia los empleados regulares de la unidad apropiada sobre los demás empleados comprendidos en la misma ... Los empleados cubiertos por este Convenio podrán participar y serán certificados, siempre y cuando reúnan los requisitos del puesto, aunque para éstos represente un descenso. Podrán participar, además, y serán certificados aquellos empleados para los cuales el puesto circulado represente un traslado. Si no hubiese empleados dentro de la C.F.S.E. para cubrir tales puestos, se emitirá una convocatoria de ingreso. ”

El convenio colectivo establece que cualquier aspirante a puesto de ingreso o ascenso, de los empleados comprendidos en la unidad apropiada, podrán competir para una posición y ser certificados siempre que se siga el procedimiento de convocatoria y reúna los requisitos del ppesto, aunque para éstos puedan representar un descenso o un traslado.
IV
Una vez incorporado el principio de mérito en el Convenio Colectivo, existía la obligación de la Unión y la C. F.S.E. de honrar el principio de mérito del personal en el servicio público. Ante tal conclusión, examinemos ahora la situación particular de los ciento setenta,y,ocho (178) empleados que ocupaban puestos nombrados luego del 1 de agosto de 2000. Surge de las estipulaciones de hechos de las partes, como una realidad incontrovertida, que para efectuar estos nombramientos no se publicaron convocatorias, ello para permitir la libre competencia para todo el público, incluyendo a los empleados de la C.F.S.E. Una vez incorporado el principio de mérito en el Convenio Colectivo y, por ende, su salvaguarda por excelencia la veda electoral, no existía discusión para obviar el principio de mérito, ni las partes podrían a su libre discreción incumplir con lo acordado. Así mismo, por ser el año 2000, un año en el cual se celebraron elecciones generales en Puerto Rico, la C.F.S.E. no podía efectuar nombramientos durante el período de veda electoral. 
A la luz de las pautas y criterios legales expuestos, nos resulta difícil concluir que la C.F.S.E. pudiera válidamente hacer los nombramientos, ascensos, reclasificaciones aquí en controversia en contravención del principio de mérito y durante el período de veda electoral. La Ley de Personal del Servicio Público, la Ley Orgánica de la C.F.S.E. y su Reglamento de Personal, así como Convenio Colectivo vigente, nos indican lo contrario.
Los nombramientos aquí impugnados resultan ser nulos. El pretexto de corregir una situación de inequidad en que se encontraba el personal temporero o provisional, no protege la actuación del Administrador del C.F.S.E., pues no hay duda de que en este caso no acató el principio fundamental, revestido de alto interés público, como lo es el principio de mérito.
La severidad de las prohibiciones contenidas en la Ley no se debilita por los supuestos buenos propósitos de la autoridad nominadora de resolver una situación de inequidad. Las personas que pasaron a ocupar los puestos de carrera aquí en controversia, sabían o debían saber que habiendo sido seleccionados libremente, a base de criterios ajenos al principio de mérito, de igual forma podían ser separados de los mismos, sin seguir ningún otro procedimiento, ya que no existía un interés propietario sobre los empleos y no les era de aplicación las garantías de retención de los mismos. El hecho de que la actual administración de la C.F.S.E. hubiere avalado el período probatorio de los empleados separados, no imparte a éstos visos de legalidad por adolecer los mismos del vicio de *1062 nulidad.
A tono con lo expuesto y siendo nulos los nombramientos aquí en controversia, por ser contrarios a la ley, el reglamento y el convenio colectivo aquí en disputa, ausente una demostración de que el foro de instancia hubiera actuado movido por pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba, dictaminamos que es procedente declarar No Ha Lugar la moción en auxilio de jurisdicción presentada el 16 de enero de 2002, y confirmar la sentencia apelada dictada el 8 de octubre de 2001.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 62
1.Las estipulaciones fueron las siguientes:

“Primero: Que el 28 de enero de 2000, las partes firmaron un Convenio Colectivo, el cual está en vigor hasta el 30 de junio de 2003 en todas sus partes.

Segundo: Que el Artículo 9 del referido convenio: Nombramientos, Ascensos y Reclasificaciones, Inciso 2c establece que los empleados temporeros se nombrarán para realizar tareas por un período determinado para atender necesidades del servicio que requieran pronta acción y que dichas tareas no sean del carácter continuo o permanente.

Tercero: Que establece, además, el referido artículo en el inciso 5c que las partes se reunirán para iniciar la elaboración del procedimiento a utilizarse para la certificación y selección de los aspirantes a puestos de ingreso, ascenso y todo lo relativo a la convocatoria de puestos.

Cuarto: Que al presente, las partes no han concluido la elaboración de dicho procedimiento, lo que ha imposibilitado el reclutamiento para cubrir puestos de la Unidad Apropiada, por lo que ha sido necesario reclutar personal temporero o provisional para cubrir las necesidades del servicio de la C.F.S.E..

Quinto: Que ante la necesidad que tiene la C.F.S.E. de contar con personal adiestrado para dar continuidad al servicio que ofrece, se ha retenido este personal por más tiempo del establecido en el Convenio Colectivo.

Sexto: Que para resolver el estado de inequidad en el que se encuentra este personal temporero o provisional, las partes:

ACUERDAN

Otorgarle permanencia a todos los empleados provisionales o temporeros que realizan tareas de la Unidad Apropiada que hayan sido nombrados en o antes del 31 de diciembre de 2000 bajo los siguientes términos y condiciones:... ”,

2. De la estipulación de hechos de las partes, se desprende que de los trescientos treinta y siete (337) nombramientos, ciento cuarenta y cuatro (144) fueron realizado antes del 1 de agosto de 2000, sobre los cuales el Tribunal de Primera Instancia no pasó juicio.
Con un simple cómputo matemático, hemos notado una diferencia de quince (15) nombramientos entre aquéllos que fueron nombrados antes del 1 de agosto de 2000 y aquellos nombrados posteriormente.
3. La veda electoral comprende el período de dos (2) meses antes y dos (2) meses después de la celebración de las elecciones generales en Puerto Rico. Esta prohibición será absoluta a excepción de aquellas transacciones de personal en que el abstenerse de efectuarlas afectaría adversamente los servicios de la C.F.S.E. Artículo 18: Prohibición de Transacciones de Personal, Reglamento de Personal de la C.F.S.E., supra.
4. La referida moción pretendía obtener una orden dirigida al administrador del C.F.S.E. para paralizar las convocatorias para *1063 cubrir los puestos de empleados que fueron cesanteados el 24 de agosto de 2001 y se ordenare la reinstalación del plan médico a dichos empleados.